No. 88-48

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

MARCELLA BURKE, CORWIN ROTH,

Defendants and Respondents.

APPEAL FROM: District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C.B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hon. Mike Greely, Attorney General, Helena, Montana
Clay R. Smith argued, Asst. Atty. General, Helena
Larry J. Nistler, County Attorney, Polson, Montana

For Respondent:

James E. Handley argued for Roth, Polson, Montana
Rebecca T. Dupuis, (Burke) Polson, Montana

Submitted: September 20, 1988

Decided: December 15, 1988

Filed:

FILED
'88 DEC 15 AM 11 32
CLERK
MONTANA SUPREME COURT

_Ethel M. Harrison_

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This case comes on appeal from the District Court of the Twentieth Judicial District, Lake County, Montana, the Honorable C. B. McNeil, presiding. The District Court dismissed revocation proceedings which resulted from a suppression of evidence. At the time of this appeal, defendant Roth had completed his probation period.

Marcella Burke and Corwin Roth pleaded guilty to criminal sale of dangerous drugs on February 4, 1987. Judgments dated March 4, 1987 were entered imposing deferred imposition of sentence under various conditions for six years as to Burke and one year as to Roth. Five probation conditions are germane to this case:

> 1. That the Defendant be placed under the jurisdiction of the Adult Probation and Parole Division of the State of Montana Department of Institutions and that he [she] comply with all of the terms and conditions established by said Division.
>
> 2. That the Defendant is prohibited from using or possessing any drugs of any kind, unless under the direct supervision of a physician.
>
> . . .
>
> 4. That the Defendant submit to blood, breath, or urine tests, without warrant, at the request of his [her] probation officer or law enforcement officers, upon reasonable cause.
>
> 5. That Defendant submit to search of his [her] person, premises or vehicle, without warrant, at the request of his [her] probation officer or law enforcement officers, upon reasonable cause.
>
> 6. That the Defendant obtain such drug and/or alcohol counseling and/or

> treatment as deemed advisable by his [her] probation officer.

Neither defendants adhered to the requirements of contacting their respective probation officers nor obtaining alcohol and drug counseling.

On September 3, 1987, at approximately 11:00 p.m., Officer Bruce Phillips of the Lake County Sheriff's Department observed Burke in the parking lot of the Diamond Horseshoe Bar. Phillips watched various persons leave the bar, walk to Burke's automobile, and then return to the bar. After requesting assistance, Phillips drove toward the Burke vehicle. He exited his car, approached Burke, and requested she exit her car. Phillips detected the smell of marijuana on Burke's breath and saw Zig-Zag cigarette papers on the vehicle's front seat. He then leaned into Burke's vehicle from the driver's side and opened the ashtray, finding the remnant of a smoked marijuana joint. Phillips contacted Burke's probation officer, David Weaver, requesting permission to continue the vehicle search. In addition to granting permission, Weaver also instructed Phillips to take Burke into custody for a possible probation violation. On further search, Phillips discovered two baggies containing marijuana in a soft-drink carton on the passenger front seat area.

After completion of the vehicle search, Phillips again contacted Weaver, obtaining permission to search Burke's residence. Residents of the home included Burke, Roth and four children. Phillips and three county officials conducted the search which revealed marijuana and various drug paraphernalia. Roth was arrested for possible probation violations at Weaver's direction. This third contact between Phillips and Weaver occurred at approximately 12:35 a.m.

3

On September 4, 1987, Weaver and Ron Alsbury, Roth's probation officer, issued written authorization to the Lake County Sheriff to arrest and hold Burke and Roth for possible probation condition violations. At this time, Weaver requested a urinalysis of Roth, who indicated his specimen would "come back dirty." Results revealed both marijuana and cocaine use. Prior to release, a similar test was performed on Burke. Likewise, the results indicated marijuana and cocaine use.

Burke and Roth posted bond and were released September 9, 1987. At the District Court's direction, each met with their probation officers in the latter's office. During Burke's meeting with Weaver, Burke admitted using marijuana. Roth also admitted to his probation officer his use of marijuana. In a follow-up meeting on September 14, 1987, Alsbury advised Roth of his Miranda rights and stated that the urine samples indicated both marijuana and cocaine use. Roth admitted to snorting cocaine, but denied injecting it intravenously. However, on September 28, 1987, Roth told Alsbury he had shot cocaine "a couple of times." Reports of probation condition violations were filed with respect to Burke and Roth on September 14, 1987.

Burke and Roth filed separate motions to dismiss or alternatively, to suppress evidence, arguing the probationary conditions were invalid under State v. Fogerty (1980), 187 Mont. 393, 610 P.2d 140. Relying on the Fogerty decision, the District Court concluded the searches were unlawful because the vehicle search "was initiated by the arresting officer and not initiated at the special request and direction of the Defendant's parole officer." The residence search was held invalid because it was warrantless. Further, the court suppressed admissions and urinalysis results as the "fruits of the poisonous tree."

4

The State urges this Court to overrule the Fogerty decision in light of the United States Supreme Court ruling, Griffin v. Wisconsin (1987), ____ U.S. ____, 107 S.Ct. 3164, 97 L.Ed.2d 709, holding that the warrantless search of a probationer's home, pursuant to Wisconsin regulation replacing the standard of probable cause by "reasonable grounds," satisfied the Fourth Amendment. Alternatively, appellant alleges the good faith exception to the warrant requirement and the inapplicability of the exclusionary rule to probation revocation hearings. We find the reasoning of Griffin persuasive and therefore need not reach the merits of appellant's alternative arguments.

## The Griffin Decision

In Griffin v. Wisconsin, supra, the defendant was convicted of a state law weapons offense. The weapon was discovered by his probation officer's supervisor during a warrantless residence search. The search was conducted pursuant to a Wisconsin regulation which allowed,

> [A]ny probation officer to search a probationer's home without a warrant as long as his supervisor approves and as long as there are "reasonable grounds" to believe the presence of contraband --including any item that the probationer cannot possess under the probation conditions.

Griffin, 107 S.Ct. at 3166. The search was based on information received by the supervisor from a police officer "that there were or might be guns in [the probationer's] apartment." Griffin, 107 S.Ct. at 3166.

The Supreme Court concluded the search of Griffin's home satisfied the demands of the Fourth Amendment because "it was carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement

5

under well established principles." Griffin, 107 S.Ct. at 3167. Continuing, the Court noted that although a warrant is usually required to carry out a search, "we have permitted exceptions when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" Griffin, 107 S.Ct. at 3167.

> A State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents "special needs" beyond normal law enforcement that may justify departures from the usual warrant and probable cause requirements.

Griffin, 107 S.Ct. at 3168. Restrictions on a probationer are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's conditional liberty status.

> These same goals require and justify the exercise of supervison to assure that the restrictions are in fact observed . . . Supervision, then, is a "special need" of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large.

Griffin, 107 S.Ct. at 3168.

This special need is equally applicable to the State of Montana. In conjunction with the need for supervision, a degree of flexibility must also be accorded the probation officer. The probation officer acts upon a continued experience with the probationer, with knowledge of the original offense, and with the probationer's welfare in mind. Because of his expertise, we view the probation officer in a far superior position to determine the degree of supervision necessary in each case.

6

This expertise would be rendered meaningless if a warrant requirement were imposed prior to a probationary search. The independent magistrate, rather than the probation officer, would ultimately make supervisory decisions. In addition, the delay associated with obtaining a warrant plus the greater evidentiary burden would, we believe, substantially inhibit the effectiveness of the probation system.

> [T]he probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society. The agency, moreover, must be able to proceed on the basis of its entire experience with the probationer, and to assess probabilities in the light of its knowledge of his life, character and circumstances.

Griffin, 107 S.Ct. at 3171. Thus, the special needs of the probation system strongly militate toward the "reasonable grounds" standard.

Under the Department of Institutions administrative rules, a probationary search may be conducted without a warrant upon reasonable cause:

> 20.7.1101(11): Search a person or property. The probationer/parolee while on probation or parole if so ordered by the sentencing court, shall submit to a search of his person, automobile, or place of residence by a probation or parole officer, at any time of the day or night, with or without a warrant upon reasonable cause as may be ascertained by a probation/parole officer.
> (Emphasis added.)

The critical language reflects the recognition that the court, viewing the circumstances individually, may see a need to impose a condition otherwise invalid to the public at

7

large. Such a condition was believed to be necessary in the instant case.

The facts involved in <u>Griffin</u> are distinguishable from those in the present case in one notable respect: namely, the intervention of police officers. This particular aspect, respondent argues, should render the United States Supreme Court decision inapplicable. However, the unique circumstances of probation enforcement in Montana counsel against such result. Montana is primarily a rural state. Because of its size and small population, probation officers are often responsible for a number of counties within their districts. It would be an untenable position, therefore, to require constant and individual supervision of every probationer. Our probation system would be unworkable, absolutely crippled, if police were not available to assist probation officers.

Nor can we demand police officers to be deaf, dumb, and blind in their observations of probationers. We see situations where the probation officer, for one reason or another, is not available to direct the actions of the police. Such lack of direction should not amount to a fortuitous event for the probationer, enabling him to escape punishment for probation violations. Instead, we encourage cooperation and communication between police and probation officers. Police cooperation with probation officers is to be encouraged as an important aid to effective administration of the probation system. Cooperation will not interfere with the final determination as to whether or not a revocation petition is to be presented to the district court. This discretion remains with the probation officer.

While acknowledging the State's interest in supervising probationers, respondents contend a greater interest exists

in protecting the privacy rights of innocent third parties who are involved in the life of the probationer.

> A search of a probationer's home cannot avoid invading the privacy of those with whom he may be living, whether they be immediate family, other relatives, or friends. Probationary status does not convert a probationer's family, relatives and friends into "second class" citizens.

State v. Fogerty (1980), 187 Mont. 393, 411, 610 P.2d 140, 151. Upon this language, respondents urge this Court to uphold the warrant requirements for residence searches. The assertion ignores the situation surrounding conditional liberty status.

It is undisputed that a probationer has a reduced privacy interest. Morrissey v. Brewer (1972), 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484. Indeed, the judgment imposing a deferred sentence is a form of contract between the court and the probationer, eliminating privacy expectations: the probationer is aware that his activities will be scrutinized. To impose a warrant requirement for residential searches, on the basis of rights enjoyed by persons not on probation, would artificially raise a probationer's privacy interest to a level inconsistent with conditional liberty status. The probation officer must be able to supervise the probationer, and upon his judgment and expertise, search the probationer's residence or cause it to be searched.

We do not ignore the interests of third parties involved in a residential search. The search should be permitted only if there is an underlying factual foundation justifying the search; and the search should not be used as an instrument of harassment or intimidation.

9

Remand Instructions

We expressly overrule State v. Fogerty (1980), 187 Mont. 393, 610 P.2d 140. The District Court's order of December 14, 1987, is reversed.

This case is remanded to the District Court for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10

Mr. Justice John C. Sheehy, dissenting:


As the only remaining Justice from the majority in State v. Fogarty, supra, I dissent to overruling that case. Fogarty is a balanced decision which, contra to the position of the state, preserved the state's interest in supervision of parolees and yet looked at the rights of others who might be involved. This decision is absolutist, something we avoided in Fogarty.

_____
Justice


Mr. Justice William E. Hunt, Sr.:

I concur in the foregoing dissent of Mr. Justice Sheehy.

_____
Justice