No. 88-503

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

        Plaintiff and Appellant,

   -vs-

EVERETT HAROLD SIGLER,

        Defendant and Respondent.

APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hon. Marc Racicot, Attorney General, Helena, Montana
Betsy Brandborg, Asst. Atty. General, Helena
Patrick L. Paul, County Attorney; Tammy K. Plubell,
Deputy County Attorney, Great Falls, Montana

    For Respondent:

        John Keith, Great Falls, Montana

Submitted on Briefs:  Jan. 5, 1989

Decided:  February 14, 1989

FILED
'89 FEB 14 AM 10 08
ED SMITH, CLERK
MONTANA SUPREME COURT

Filed:

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The State of Montana appeals the July 27, 1988 order of the Eighth Judicial District, Cascade County, denying reconsideration of the court's June 9, 1988 order denying the State's petition for revocation of respondent Sigler's suspended sentence. In light of this Court's recent decision in State v. Burke (Mont. 1988), ____ P.2d ____, 45 St.Rep. 2278, we reverse the order of the District Court and remand for further proceedings.

Pursuant to a plea agreement, respondent Sigler was found guilty of felony criminal possession of dangerous drugs and misdemeanor possession of drug paraphernalia. Respondent received a three year deferred sentence subject to six conditions. Respondent failed to comply with any of the six conditions of the deferred sentence and failed three consecutive urine drug tests. The District Court then revoked the three-year deferred sentence and replaced the deferred sentence with a five-year suspended sentence in the Montana State Prison. The suspended sentence was conditioned upon respondent's meeting four conditions. These conditions included that the respondent not possess or use dangerous drugs and that he "submit a urine sample upon request of his probation officer or any peace officer to assure compliance with the above condition."

On February 5, 1988, respondent's probation officer, Michael Redpath, filed a report of violation alleging respondent had failed to appear for a urine sample scheduled for February 4, 1988. The report of violation recommended that the suspended sentence be revoked.

On June 3, 1988, an evidentiary hearing was held and on June 8, 1988, the court issued its order dismissing the petition for revocation of the suspended sentence. The court found that although the respondent was required to submit to

2

urinalysis testing at the request of his probation officer, the probation officer stated he had no specific reason for believing the respondent was using drugs at the time he requested a urine sample from the respondent. The court held that the search requested in this case was based solely upon the probation officer's "unfettered discretion." The case of State v. Fogarty (1980), 187 Mont. 393, 610 P.2d 140, requires the probation officer to have some "articulable reason" for conducting a search of a probationer. Thus, no violation had occurred, except that based upon an improper search of the defendant.

On December 15, 1988, this Court decided the case of State v. Burke (Mont. 1988), ____ P.2d ____, 45 St.Rep. 2278. In that decision, this Court specifically overruled the Fogarty decision based upon the United States Supreme Court's decision in Griffin v. Wisconsin (1987), ____ U.S. ____, 107 S.Ct. 3164, 97 L.Ed.2d 709. The Burke decision replaced the standard of probable cause, applicable when conducting warrantless searches of probationers, with the standard of "reasonable grounds." This Court and the Griffin Court base the departure from the probable cause standard upon the "special needs" which exist in operating a State's probation system. Burke, 45 St.Rep. at 2281.

> Restrictions on a probationer are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's conditional liberty status.
>
> "These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed. . . Supervision, then, is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large."
>
> Griffin, 107 S.Ct. at 3168.

3

> This special need is equally applicable to the State of Montana. In conjunction with the need for supervision, a degree of flexibility must also be accorded the probation officer. The probation officer acts upon a continued experience with the probationer, with knowledge of the original offense, and with the probationer's welfare in mind. Because of his expertise, we view the probation officer in a far superior position to determine the degree of supervision necessary in each case.

Burke, 45 St.Rep. at 2281-2282.

In between the Griffin and Burke decisions, the Ninth Circuit dealt with a similar situation, except that the order imposing probation conditions did not explicitly require drug testing as a probation condition. U.S. v. Duff (9th Cir. 1987), 831 F.2d 176. In that case, relying on Griffin, the court found "the search must be reasonable and must be based upon the probation officer's reasonable belief that it is necessary to the performance of her duties." Duff, 831 F.2d at 179. (Emphasis added.)

> The urine testing employed here was narrowly tailored to determine whether Duff was using drugs and was less intrusive of Duff's privacy than other methods of monitoring, such as continuous surveillance or repeated searches of Duff's home and property. The probation officer had a reasonable suspicion that Duff might be using drugs . . . Because Duff had been convicted for drug possession, the probation officer reasonably believed that drug testing was necessary "to foster the offender's reformation and to preserve the public's safety." Williams, 787 F.2d at 1185.

Duff, 831 F.2d at 179.

As previously noted, the District Court in this case found the probation officer ordered the urinalysis test based upon his unfettered discretion. This finding was based upon

4

the probation officer's testimony that he had no specific reason to believe that the respondent was using drugs at the time of the request.

However, the court also found that the probation officer was authorized to require the respondent to submit to urine testing and that the probation officer felt "the rehabilitation process could not begin until he was certain the Defendant was free from drugs. . . " Further, it is undisputed that the respondent had not passed a drug test from the time of his arrest until directed to appear for the February 4, 1988 urinalysis. We find such evidence is sufficient to establish reasonable grounds for requiring the respondent to submit a urine sample for determining whether or not the respondent is complying with the conditions of the suspended sentence. We hereby reverse the order of the District Court and remand for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices