No. 96-453

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

       Plaintiff and Respondent,

v.

EDWARD C. BEAUDRY,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and for the County of Fallon,
The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Lorraine A. Schneider; Simonton, Howe & Schneider, Glendive, Montana

       For Respondent:

              Hon. Joseph P. Mazurek, Attorney General; Cregg Coughlin, Assistant Attorney General, Helena, Montana

              John Huntley, Fallon County Attorney, Baker, Montana

Submitted on Briefs: January 23, 1997

Decided: April 15, 1997

**FILED**

APR 15 1997

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

/Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Edward C. Beaudry (Beaudry) appeals from the judgment entered by the Sixteenth Judicial District Court, Fallon County, on his guilty plea to the felony offense of possession of dangerous drugs, having reserved the right to appeal the court's denial of his motion to suppress evidence. We affirm.

The issue on appeal is whether the District Court erred in denying Beaudry's motion to suppress evidence discovered during a warrantless search of his residence by his probation officer.

Beaudry was convicted of three counts of felony burglary, two counts of felony theft and one count of misdemeanor theft in 1993. He received a three-year deferred sentence, and was placed on probation, in February of 1994. Beaudry's probation included conditions prohibiting him from using alcohol and using or possessing dangerous drugs and from entering bars. It also required him, upon "reasonable cause," to submit to a warrantless search of his person, vehicle or residence by his probation officer.

John Hodge (Hodge) was Beaudry's supervising probation officer. During the time leading up to the search of Beaudry's residence which is at issue in this case, Hodge learned of numerous probation violations, as well as additional potential violations, by Beaudry. Four urine samples taken from Beaudry in 1994 and 1995 indicated that he was using drugs. Beaudry admitted to Hodge on four occasions between March 8, 1994 and June 22, 1995 that

2

he had consumed beer, and Hodge saw Beaudry at bars on two other occasions. In addition, Beaudry was charged with shoplifting in June of 1995, and subsequently pleaded guilty. Moreover, Hodge learned that Beaudry had stolen and pawned a .44 caliber handgun. Fallon County Sheriff Tim Barkley also informed Hodge that a second .44 caliber handgun had been stolen and that Beaudry was a suspect in that theft.

On October 24, 1995, Hodge conducted a warrantless search of Beaudry's residence in Baker, Montana, with the aid of a law enforcement officer. Beaudry was not present at the time of the search and did not consent to it. Hodge discovered dangerous drugs during the search.

On November 21, 1995, the State of Montana (State) charged Beaudry with criminal possession of dangerous drugs, a felony. Beaudry pleaded not guilty to the charge.

Beaudry moved to suppress all evidence seized during Hodge's warrantless search of his residence on the basis that the search violated his constitutional right to privacy and to freedom from unreasonable searches and seizures. The State acknowledged that the search was conducted without a warrant, but argued that Hodge had "reasonable grounds" to conduct the warrantless search. After an evidentiary hearing, the District Court made findings relating to the information Hodge possessed at the time of the search; those findings indicated that Hodge had evidence of drinking, drugs and theft by Beaudry. On that basis, the court determined that Hodge had reasonable cause to search Beaudry's residence and denied Beaudry's motion to suppress.

Beaudry subsequently withdrew his not guilty plea and pleaded guilty to the charged felony offense of criminal possession of dangerous drugs, reserving the right to appeal the denial of his motion to suppress. Thereafter, the District Court entered judgment, deferring imposition of sentence for one year subject to specified terms and conditions. Beaudry appeals.

> Did the District Court err in denying Beaudry's motion to suppress evidence discovered during a warrantless search of his residence by his probation officer?

We review a district court's denial of a motion to suppress to determine whether the court's findings of fact are clearly erroneous. We also review whether the findings were correctly applied as a matter of law. State v. Burchett (Mont. 1996), 921 P.2d 854, 856, 53 St.Rep. 590, 591.

In this case, the District Court denied Beaudry's motion to suppress based on facts and findings largely undisputed by Beaudry. Specifically, the District Court found that Beaudry's conditions of probation included prohibitions against entering bars, using alcohol and using or possessing illegal drugs. The court also found that:

> On June 22, 1994, a sample of Mr. Beaudry's urine tested positive for cannabinoids. On June 9, 1995 a sample of Mr. Beaudry's urine tested positive for cannabinoids. On June 9, 1995, Mr. Beaudry was charged with shoplifting. He subsequently plead guilty. On October 24, 1995, Mr. Beaudry was charged with the theft of a .44 caliber revolver. He subsequently plead guilty. Prior to October 24, 1995, Mr. Beaudry had told [Hodge] on more than one occasion that if he were drinking or using [drugs] that he would shoplift or steal. His history appears to support that statement. Although as of the time of the search [Hodge] knew the .44 caliber revolver Mr. Beaudry had stolen from the Gun Runner Gunshop, had been pawned by Mr. Beaudry, Mr. Hodge also

4

knew that law enforcement also had a report of a second stolen .44 caliber revolver in Baker. . . .

The record also reflected that Hodge knew that Beaudry had consumed beer and been in bars on several occasions. Accordingly, the District Court determined that this underlying factual foundation

> gave this probation officer sufficient grounds to believe that Mr. Beaudry was back to drinking and doing drugs and stealing to support those activities. It is not too big of [a] stretch to conclude that evidence of such activities would be found at Mr. Beaudry's residence. The demonstrated, dynamic correlation of Mr. Beaudry's thefts with his drug and alcohol use gave this officer reasonable cause to search his residence for evidence.

It is well-established in Montana that a probation officer may search a probationer's residence without a warrant so long as the officer has reasonable cause for the search. Burchett, 921 P.2d at 856 (citations omitted). This "reasonable cause" standard, while substantially less than the probable cause standard required by the Fourth Amendment to the United States Constitution, results from the probationer's diminished expectation of privacy and the probation officer's superior position in determining what level of supervision is necessary to provide both rehabilitation of the probationer and safety for society. Burchett, 921 P.2d at 856 (citations omitted). "The probation officer must be able to supervise the probationer, and upon his judgment and expertise, search the probationer's residence. . . ." State v. Burke (1988), 235 Mont. 165, 171, 766 P.2d 254, 257.

As noted above, Beaudry does not challenge the bulk of the District Court's findings. Indeed, he concedes that Hodge had reasonable cause to believe he had violated the

conditions of his probation at various times during the twenty-month period immediately preceding the search. His sole contention is that there was an insufficient relationship between his activities and his residence to provide reasonable cause for Hodge's warrantless search of the residence. We disagree.

For purposes relevant to the issue before us, the facts of the present case are similar to those we recently addressed in State v. Boston (1995), 269 Mont. 300, 889 P.2d 814, involving the warrantless search of a parolee's residence and storage garage based on the lesser "reasonable grounds" standard required for such searches. There, parolee Monte Chalmers Boston was subject to a "reasonable cause" warrantless parole search identical to Beaudry's condition of probation. See Boston, 889 P.2d at 815. Boston's parole officer, John Kelly, became aware of evidence linking Boston to an arson fire at the National Center for Appropriate Technology and indicating Boston's first-hand knowledge of an earlier arson fire at the Mormon Church. Boston, 889 P.2d at 815.

Kelly authorized a warrantless search of Boston's residence. After learning that Boston rented a storage garage separate from his residence, Kelly authorized a search of the garage as well. Boston, 889 P.2d at 815.

Boston subsequently was charged with burglary, theft and arson. Boston, 889 P.2d at 815. He moved to suppress all evidence taken during the warrantless searches of his residence and storage garage. Relying on Kelly's testimony about the circumstances

surrounding his decision to authorize the searches, the district court determined that Kelly had reasonable cause to authorize the searches. Boston, 889 P.2d at 816.

On appeal, we reiterated the considerations underlying the "reasonable grounds" standard for warrantless searches by probation and parole officers, observing that probationers and parolees have conditional liberty and a reduced privacy interest. See Boston, 889 P.2d at 816-17 (citations omitted). Moreover, a probation or parole officer must be allowed to determine the supervision required and, " 'upon his judgment and expertise, search the probationer's [or parolee's] residence. . . .' " See Boston, 889 P.2d at 817 (quoting Burke, 766 P.2d at 257). Kelly had evidence linking Boston to two arsons and, therefore, "Kelly clearly had reasonable grounds to suspect parole violations which justified the warrantless searches of Boston's home and storage garage." Boston, 889 P.2d at 817. We concluded that substantial evidence supported the district court's "reasonable grounds" finding and affirmed the denial of Boston's motion to suppress. Boston, 889 P.2d at 817.

Here, we are presented with a record of known, as well as reasonably suspected, probation violations by Beaudry. These undisputed facts, combined with Hodge's expertise, continued experience with Beaudry and awareness of Beaudry's established and admitted pattern of stealing and substance abuse, provided Hodge with reasonable grounds to believe he would find evidence of drug- or alcohol-related probation violations at Beaudry's residence. Thus, as in Boston, we conclude that substantial evidence supports the District Court's finding that Hodge had reasonable cause to search the residence.

7

Beaudry repeatedly posits that a relationship must exist between the facts constituting reasonable cause for the search and the place to be searched, citing to a number of cases from other jurisdictions which--on various factual scenarios--require such a relationship. He seems to argue from this starting point that some concrete set of parameters--some "bright line test"--has been, or must be, established against which the facts of each and every case involving a warrantless probation search under the "reasonable cause" standard can be measured with precision to determine whether the search is valid.

While our discussion above reflects our agreement with Beaudry that the facts justifying the search must bear some relationship to the place searched, that relationship exists in this case. Assuming that evidence of drug- or alcohol-related probation violations by Beaudry actually existed, what more--or even equally--likely place for it than at his residence? No case cited by Beaudry or located by this Court requires that evidence of probation violations be seen by the probation officer--or by any other person--at the probationer's residence before a search of the residence can be upheld under the reasonable grounds test.

Furthermore, with regard to Beaudry's implicit argument that a "bright line test" be applied to "reasonable cause" warrantless searches, the argument misperceives both the nature of the reasonable cause test and the rationale for the reasonable cause exception to the usual warrant requirement for a valid search. The reasonable cause test is, itself, a fact-driven test inasmuch as the search "should be permitted only if there is an underlying factual

foundation justifying the search[.]" Burke, 766 P.2d at 257. Indeed, the reasonable cause standard is substantially similar to the "reasonable grounds" language contained in § 61-8-403(4), MCA, and we have indicated that determination of whether "reasonable grounds" exists is a finding of fact based on the totality of circumstances. See Anderson v. State Dept. of Justice (1996), 275 Mont. 259, 263, 912 P.2d 212, 214. In the context of a motion to suppress, the district court is the trier of fact and we review the district court's findings under the clearly erroneous test. See Burchett, 921 P.2d at 856.

Moreover, the rationale for the reasonable cause exception to the usual Fourth Amendment warrant requirement is that the probation officer's expertise and experience with the probationer puts the officer in a superior position to determine what level of supervision is necessary to provide rehabilitation to the probationer and safety for society. Burchett, 921 P.2d at 856. To establish an arbitrary rule of law setting a "floor" against which reasonable cause searches would be measured would negate the very considerations underlying the reasonable cause exception to the warrant requirement in the first instance. See Burchett, 921 P.2d at 856; Boston, 889 P.2d at 816-17; Burke, 766 P.2d at 256. Whether reasonable cause existed is, and must remain, primarily a fact-driven test to be determined by district courts on a case-by-case basis.

Having concluded above that substantial evidence supports the District Court's finding that Hodge had reasonable cause to search Beaudry's residence, we further conclude that the finding is not otherwise clearly erroneous and that the court's findings were correctly applied

as a matter of law. Accordingly, we hold that the District Court did not err in denying Beaudry's motion to suppress.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10

Justice W. William Leaphart, specially concurring.

I concur in the result reached in this case. However, I write separately to clarify what I believe is an important distinction in the context of probation searches. In addressing Beaudry's argument that there must be a relationship between the violation alleged and the place to be searched, the Court states:

> While our discussion above reflects our agreement with Beaudry that the facts justifying the search must bear some relationship to the place searched, that relationship exists in this case. Assuming that evidence of drug- or alcohol-related probation violations by Beaudry actually existed, what more--or even equally--likely place for it than at his residence?

In the above passage, the Court seems to hold that the necessary "relationship" exists between the alcohol related probation violations and the place to be searched, that is, the home. I query whether the alcohol related violations provide a sufficient "relationship" to justify a search of the home. As the Court points out, the probation officer knew, prior to conducting the search, that Beaudry had consumed beer and had been in bars on several occasions. Accordingly, he already had sufficient evidence to revoke Beaudry's parole for alcohol consumption.

By way of example, if a probationer were to violate the conditions of his probation by leaving the state, that infraction would not, in my view, provide "reasonable cause" to search his home. The nature of the violation is such that it does not bear fruit necessitating a search. Likewise, one need not conduct a search of a probationer's home to substantiate that he has been drinking in bars. There is no nexus between the offense and the place

11

searched.

On the other hand, theft is an offense for which there is "fruit;" in this case, the second .44 caliber revolver which had been reported stolen in the Baker area. As the Court points out, a probation search must be based upon "reasonable cause." State v. Burchett (1996), 277 Mont. 192, 195, 921 P.2d 854, 856. Further, "reasonable cause" for a probation search, like "reasonable grounds" for a traffic stop under § 61-8-403(4), MCA, is a finding based upon the totality of the circumstances. See Anderson v. State Dept. of Justice (1996), 275 Mont. 259, 263, 912 P.2d 212, 214. "Reasonable cause" is thus an objective rather than a subjective standard. Anderson, 912 P.2d at 214. Accordingly, although the probation officer did not specifically focus on the missing revolver as justification for his search, the probation officer's knowledge of the second stolen revolver was one of many pieces of information comprising the "totality of circumstances" known to the officer. Knowledge of the missing revolver must be viewed as part of the larger collection of information which led the officer to believe that Beaudry was in violation of his probation, thus giving the probation officer reasonable cause to search Beaudry's residence. See Oregon v. Gulley (Or. 1996), 921 P.2d 396, 401. I would find the requisite nexus in the fact that Beaudry had stolen one gun in the Baker area and that another .44 caliber revolver had been reported stolen. In light of the totality of the circumstances, the search was objectively reasonable.

W. William Buyhart
Justice