JUSTICE LEAPHART
delivered the Opinion of the Court.
¶1 Montana’s Thirteenth Judicial District Court, Yellowstone County, sentenced Kristin Anne Moody to a two-year deferred sentence based on three separate charges. Prior to sentencing, Moody filed objections to several probation conditions recommended in the pre-sentence investigation (PSI) report. The District Court nonetheless imposed most of the proposed conditions. Moody now appeals. We affirm on the following issues:
¶2 1. Does requiring a probationer to keep her home open and available for the probation officer to visit at all times violate the Montana Constitution?
¶3 2. Did the District Court properly impose a travel restriction as a condition of Moody’s probation?
BACKGROUND
¶4 In responding to a report on May 7, 2004, Officers Wells and Ostermiller of the Laurel Police Department came across a gray van that had reached a complete stop in the middle of an intersection. Officers Wells and Ostermiller approached the van and found Moody, who appeared to be asleep at the wheel. The officers removed Moody from the van and verified that she did not need medical attention. Smelling of alcohol and unsteady on her feet, Moody swore at the officers and refused to perform any field sobriety tests or provide a breath alcohol sample. Moody could not find the registration for the *520 vehicle and stated that she did not have any car insurance. The officers arrested Moody, placing her in handcuffs. When they tried to get Moody into the backseat of the patrol vehicle, Moody kicked at Officer Wells, striking him in the face with such force that she left a visible boot imprint. Eventually the officers restrained Moody and transported her to the Yellowstone County Detention Facility.
¶5 The State charged Moody by information with Count I, assault on a police officer, a felony in violation of § 45-5-210(l)(a), MCA; Count II, driving under the influence of alcohol or drugs, a misdemeanor in violation of § 61-8-401, MCA; and Count III, driving without required motor vehicle insurance, a misdemeanor in violation of § 61-6-302, MCA.
¶6 Moody pled guilty to all three counts pursuant to a plea agreement. Prior to sentencing, Probation Officer Barry Ivanoff prepared the PSI with recommendations for the conditions of Moody’s probation. Moody filed an objection to several of the proposed conditions, including 2 and 3, which read as follows:
2. The Defendant will not change [her] place of residence without first obtaining permission from [her] Probation/Parole Officer. The residence must be approved by [her] Probation & Parole Officer. The Defendant will make the home open and available for the Probation & Parole Officer to visit as required per policy. The Defendant will not own dangerous/vicious animals such as guard dogs, use perimeter security doors, or refuse to open the door of the residence when requested. [Emphasis added.]
3. The Defendant shall not leave [her] assigned district without first obtaining written permission from [her] Probation & Parole Officer.
¶7 Moody objected to the requirement that she make her home “open and available” to her probation officer on the grounds that this condition obviated the reasonable cause requirement for searches of probationers’ homes, and thus violated her constitutional rights of privacy and protection from unreasonable search and seizure. Moody also objected to the travel restriction, arguing that it inhibited her constitutional rights to travel and work and her freedom of association; she also argued that the restriction was not sufficiently related to her rehabilitative needs and did not protect society.
¶8 At the sentencing hearing, Moody called Officer Ivanoff to testify regarding the probation conditions he recommended. After Moody and the State argued their respective positions, the District Court issued the sentence, imposing both the second and third probation conditions. *521 Moody appeals.
STANDARD OF REVIEW
¶9 We review a District Court’s criminal sentence for legality only. State v. Eaton, 2004 MT 283, ¶ 11, 323 Mont. 287, ¶ 11, 99 P.3d 661, ¶11.
DISCUSSION
¶10 1. Does requiring a probationer to keep her home open and available for the probation officer to visit at all times violate the Montana Constitution?
¶11 Moody argues that Condition 2 of her probation, which requires that she keep her “home open and available for the Probation & Parole Officer to visit,” violates the reasonable cause standard applied by this Court to searches of probationers’ residences, as well as Admin. R. M. 20.7.1101(7), governing conditions on probation. Because we conclude that a “home visit” to a probationer’s residence does not qualify as a “search,” we affirm the District Court’s ruling.
¶12 The search of a person may be conducted pursuant to a valid search warrant or in accordance with a judicially recognized exception. Section 46-5-101, MCA. In Montana, a probation officer may search a probationer’s residence without a warrant so long as the officer has reasonable cause for the search. See State v. Roper, 2001 MT 96, ¶ 12, 305 Mont. 212, ¶ 12, 26 P.3d 741, ¶ 12; State v. Beaudry, 282 Mont. 225, 228, 937 P.2d 459, 460-61 (1997); State v. Burchett, 277 Mont. 192, 195, 921 P.2d 854, 856 (1996); State v. Boston, 269 Mont. 300, 305, 889 P.2d 814, 817 (1995); and State v. Burke, 235 Mont. 165, 169, 766 P.2d 254, 256-57 (1988). “The ‘reasonable cause’ standard is substantially less than the probable cause standard required by the Fourth Amendment because of the probationer’s diminished expectation of privacy ....” Burchett, 277 Mont. at 195-96, 921 P.2d at 856 (citing Burke, 235 Mont. at 169, 766 P.2d at 256-57, and Griffin v. Wisconsin, 483 U.S. 868, 107 S. Ct. 3164 (1987)). Admin. R. M. 20.7.1101(7) further underscores our precedent by permitting a warrantless search of a probationer’s or parolee’s person, vehicle or residence only “upon reasonable cause.”
¶13 The State points out that the United States Supreme Court has recently held that a suspicionless search, conducted pursuant to a California statute requiring parolees to agree in writing to be subject to searches with or without cause was constitutional. Samson v. California,_U.S._, 126 S. Ct. 2193 (2006). The search in Samson *522 was conducted by a police officer rather than a probation officer so the court applied an ordinary Fourth Amendment analysis, rather than engaging in a Griffin “special needs” analysis applicable to probationers. Griffin, 483 U.S. at 873, 107 S. Ct. at 3168. The State, relying on Samson, contends that if there is no “reasonable cause” requirement for a search of a parolee, there should be no such requirement for a less intrusive “home visit,” which is not a search.
¶14 Moody contends that Samson is distinguishable since it involved search of a parolee on the street as opposed to a probationer in her home; further, since probationers such as Moody are much less of a threat than parolees, they have a higher expectation of privacy and freedom from unreasonable searches under the Montana Constitution.
¶15 The initial inquiry then is whether a “home visit” constitutes a “search” under Article II, Section 11, Montana Constitution.
¶16 A home cisii-where the probation officer stops by the probationer’s home to determine whether the individual is abiding by the conditions of his or her probation-operates as an important check on a probationer’s rehabilitation efforts. As the Department of Corrections states in its Probation and Parole Bureau Standard Operating Procedures, home visits are conducted to address the following:
* verify offender’s home address;
* observe and determine lifestyle factors;
* meet significant others, family members, other residents of home;
* observe residence for contraband, weapons, illegal or dangerous objects (if visual inspection of the residence provides reasonable suspicion that the offender has items banned by probation rules or court order, conduct a search per P&P 60-4, Searches of Offender’s Person, Vehicle, Residence Confiscation of Offender’s Property);
* observe residence for non-essential items such [as] VCR/ Cable/Computer-Intemet capabilities if offender’s financial obligations to victim, court and bureau are not being met;
* observe residence for cable/computer/Internet capabilities if offender is a sex offender and/or has restrictions;
* conduct visual inspection of home;
* observe neighborhood for potential public safety issues such as high crime area (gang graffiti), schools/parks (sex offenders) or other vulnerable neighbors;
* assess home environment for officer safety (may draft a floor *523 plan of home); and
* require offender to submit to breathalyzer/urinalysis screening for use of alcohol and/or drugs.
Chapter 60, “Sign-Up Procedure/Supervision Standards.”
¶17 As the above list indicates, probationary restrictions are meant to facilitate rehabilitation and ensure that the community is not harmed by the probationer’s conditional liberty status. Burke, 235 Mont. at 169, 766 P.2d at 256. The probation officer is charged with not only enforcing conditions of supervision, but also discerning any deception by the probationer. United States v. Reyes, 283 F.3d 446, 458 (2d Cir. 2002).
¶18 In determining whether a “search” has occurred, we look at three factors: (1) whether the person has an actual expectation of privacy; (2) whether society is willing to recognize that expectation as objectively reasonable; and (3) the nature of the State’s intrusion. State v. Elison, 2000 MT 288, ¶ 48, 302 Mont. 228, ¶ 48, 14 P.3d 456, ¶ 48.
¶19 “Probation is an act of grace by a sentencing court, intended to give the offender a chance to rehabilitate outside the prison setting.” State v. Boulton, 2006 MT 170, ¶ 15, 332 Mont. 538, ¶ 15, 140 P.3d 482, ¶ 15. Although less restrictive than prison, probation is nonetheless a form of punishment. Although a probationer is restored to “full rights” upon successful completion of state supervision, Article II, Section 28(2), Montana Constitution, a probationer who is still subject to supervision has a diminished expectation of privacy. Burchett, 277 Mont. at 195-96, 921 P.2d at 856. Accordingly, probationers do not enjoy the absolute liberty and heightened expectations of privacy afforded every Montana citizen; rather, they are subject to conditional liberty properly dependent upon special restrictions. Beaudry, 282 Mont. at 229, 937 P.2d at 461. Home visits are one commonly imposed condition of probation. We conclude that a convicted felon who is granted probation on a clearly expressed condition, of which she is “unambiguously” aware, that she make her home open and available for the probation officer to visit pursuant to state policy does not have an actual expectation of privacy that would preclude home visits. United States v. Knights, 534 U.S. 112, 119, 122 S. Ct. 587, 591-92 (2001). Since there is no actual expectation of privacy, there is no search.
¶20 Even assuming arguendo that a probationer had an actual expectation that there would be no home visits during the period of supervision, home visits serve to ensure that the supervised felon is abiding by the conditions of her probation, thus addressing the *524 problem of recidivism. As the United States Supreme Court has noted, “ [t]he very assumption of the institution of probation’ is that the probationer is more likely than the ordinary citizen to violate the law.’ The recidivism rate of probationers is significantly higher than the general crime rate.” Knights, 534 U.S. at 120, 122 S. Ct. at 592 (citing studies) (quoting Griffin, 483 U.S. at 880, 107 S. Ct. at 3172). Studies suggest that “more intensive supervision can reduce recidivism ....” Griffin, 483 U.S. at 875, 107 S. Ct. at 3168. Accordingly, society would not recognize that expectation as objectively reasonable.
¶21 As to the nature of the state’s intrusion, home visits are a commonly imposed condition of probation which allow the probation officer to determine whether the individual is abiding by the conditions of probation and thus serve to protect the safety and welfare of society.
¶22 Other courts addressing the issue of whether a home visit constitutes a search have concluded that, although such visits can evolve into a search, the initial visit is not a search. See United States v. Workman, 585 F.2d 1205, 1208 (4th Cir. 1978) (superseded on other grounds); Latta v. Fitzharris, 521 F.2d 246 (9th Cir. 1975), cert. denied 423 U.S. 897 (1975). The Second Circuit Court of Appeals in Reyes, 283 F.3d at 460-62, upheld a plain view discovery of contraband in the context of a home visit of a probationer pursuant to a probation condition permitting home visits at any time. The appeals court reasoned that such visits are a necessary incident to probationary supervision and concluded:
Accordingly, consonant with the Supreme Court’s holding in Knights that “no more than reasonable suspicion” was required to search a state probationer’s home when that search was authorized by a condition of probation, we hold that the probable cause requirements of the Fourth Amendment do not apply to a federal probation officer conducting a home visit-a far less invasive form of supervision than a search-pursuant to a convicted offender’s conditions of supervised release. Furthermore, we hold that because home visits “at any time” are conducted pursuant to a court-imposed condition of federal supervised release of which the supervisee is aware, and because a home visit is far less intrusive than a probation search, probation officers conducting a home visit are not subject to the reasonable suspicion standard applicable to probation searches under Knights.
Reyes, 283 F.3d at 462.
¶23 A probationer has no reasonable expectation of privacy that *525 would preclude home visits from taking place. See also State v. Guzman, 990 P.2d 370 (Or. App. 1999); Grubbs v. State, 373 So.2d 905, 908-10 (Fla. 1979).
¶24 Since a home visit is not a search, a probation officer may not open drawers, cabinets, closets or the like; nor may the officer rummage through the probationer’s belongings. While a home visit has the potential to turn into a search pursuant to an officer’s plain view observations, it must remain within the parameters of a home visit unless or until there is reasonable cause to engage in a search.
¶25 The dissent argues that the Court has gone astray in its analysis by relying on the fact that Moody was granted probation on the condition that she submit to home visits. In the dissent’s view, this condition of probation “plays no meaningful” role in determining whether the intrusion constitutes a search. Secondly, assuming that the Court has adopted a “consent” rationale for circumventing what would otherwise be a search, the dissent proceeds to argue lack of meaningful consent.
¶26 The “condition of probation” focus, however, is separate from a “consent” analysis. The United States Supreme Court made this abundantly clear in Knights where, although the Court specifically declined to address the issue of “consent,” it nonetheless noted that the probation order clearly set out the probation search requirement; that Knights was “unambiguously’ aware of the condition and that his acceptance of a clear and unambiguous condition significantly diminished his reasonable expectation of privacy. In Knights, the probationary search which the Court upheld was predicated on both the probation condition and reasonable suspicion. In 2006, the Court in Samson addressed the question left unresolved inKnights-whether the search would have been reasonable under the Fourth Amendment had it been solely predicated upon the condition of probation. Samson, 126 S. Ct. at 2198 (citing Knights, 534 U.S. 120 n. 6, 122 S. Ct. at 592 n. 6). Clearly, under both Samson and Knights, the condition of probation (or parole) is not only meaningful but, in the words of the Court, “salient” (Knights, 534 U.S. at 118, 122 S. Ct. at 491; Samson, 126 S. Ct. at 2199) and can be dispositive of the issue of whether a probationer has an expectation of privacy that society would recognize as legitimate.
¶27 In the present case, Moody was granted probation on certain conditions of which she was “unambiguously’ aware. Her expectation of privacy during her period of supervision, like Knights’ and Samson’s, was significantly diminished. Although the dissent likens *526 Moody’s plight to that of a prisoner in a cell, that is not our holding. A prisoner in a cell has no expectation of privacy. See Samson; New Jersey v. T.L.O., 469 U.S. 325, 105 S. Ct. 733 (1985); and Hudson v. Palmer, 468 U.S. 517, 104 S. Ct. 3194 (1984). Under our holding today, a probationer has an expectation of privacy during her period of supervision, albeit significantly diminished. The enclosed areas of a probationer’s residence (closets, cabinets, drawers and the like) cannot be searched without reasonable cause.
¶28 In conclusion, we hold that home visits, as a routine and reasonable element of supervising a convicted person serving a term of supervised release, are not searches and are thus not subject to the reasonable cause standard. The District Court, in requiring that Moody consent to home visits as a condition of probation, did not violate Moody’s constitutional rights to privacy or right to be free from unreasonable searches.
¶29 2. Did the District Court properly impose a travel restriction as a condition of Moody’s probation?
¶30 Moody also insists that the District Court erred by imposing Condition 3, requiring that she obtain written permission from her probation officer before leaving her assigned district. Although Moody concedes that this condition does not absolutely limit her travel beyond the multi-county district, she nonetheless argues that the condition improperly places her rights at the mercy of the supervising officer. We disagree.
¶31 Since probation is a form of punishment, probationers do not enjoy the absolute liberty afforded every citizen; rather, they are subject to conditional liberty properly dependent on special restrictions. Beaudry, 282 Mont. at 229, 937 P.2d at 461. We have held that for a condition to be reasonably related to the objectives of rehabilitation and protection of the victim and society, a sentencing condition “must have some correlation or connection to the underlying offense for which the defendant is being sentenced.” State v. Malloy, 2004 MT 377, ¶ 8, 325 Mont. 86, ¶ 8, 103 P.3d 1064, ¶ 8. This of course requires analyzing the condition in the context of the charged offense. To be legitimate, the condition must both rehabilitate the defendant and help protect society from further similar conduct. Malloy, ¶ 8.
¶32 In this case, the offense resulted from Moody’s admitted problem with alcohol. Unless Moody maintains sobriety, she is likely to re-offend. The deferred sentence permitted Moody the opportunity to address her chemical dependency under the supervision of the probation office. This supervision properly includes a travel restriction *527 to allow Moody’s probation officer to effectively keep track of her whereabouts in order to ensure that she remains on course with treatment. The travel restriction does not prohibit Moody from leaving her assigned district, it merely requires written permission from her probation officer. In light of our mandate that a probation restriction both rehabilitate the defendant and help protect society from further similar conduct, we conclude that the District Court properly imposed Condition 3.
¶33 Affirmed.
CHIEF JUSTICE GRAY, JUSTICES WARNER and MORRIS concur.