DA 13-0423

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 112

STATE OF MONTANA,

Plaintiff and Appellee,

v.

ANGELA MARIE FISCHER,

Defendant and Appellant.

APPEAL FROM:     District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DC 11-52
Honorable James B. Wheelis, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Paul Sullivan; Measure, Sampsel, Sullivan & O'Brien, P.C.;
Kalispell, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General; Mardell Ployhar, Assistant
Attorney General; Helena, Montana

Bernard G. Cassidy, Lincoln County Attorney; Robert Slomski, Deputy
County Attorney; Libby, Montana

Submitted on Briefs:  March 12, 2014
Decided:  April 29, 2014

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    Angela Marie Fischer appeals the Nineteenth Judicial District Court's denial of her motion to suppress evidence in her probation revocation hearing. The sole issue on appeal is whether the District Court erred by denying Fischer's motion to suppress. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2    In December 2011, pursuant to a plea agreement, Fischer pleaded guilty to two counts of criminal distribution of dangerous drugs. The District Court sentenced her to two concurrent three-year sentences, but deferred imposition of the sentences subject to the terms and conditions of her probation. The conditions included seeking and maintaining employment or maintaining a program approved by the Board of Pardons and Parole or the supervising officer, personally contacting her supervising officer or designee when directed by the officer, and reporting any contact with law enforcement to her supervising officer or designee within 72 hours. She was required to make her residence open and available to an officer for a home visit or for a search upon reasonable suspicion. She also was required to submit to bodily fluid testing for drugs or alcohol on a random or routine basis.

¶3    On June 25, 2012, Fischer reported to a probation officer technician named Penny Ray that she had recently lost her job. Fischer's probation officer, Steve Watson, called to discuss her loss of employment, but Fischer did not answer her phone. When Fischer

2

did not promptly return his call, Officer Watson conducted a home visit at Fischer's residence. Ray accompanied him on the visit.

¶4 Officer Watson found Fischer at home. He authorized Ray to obtain a urine sample from Fischer. The test came back negative. Because Fischer had prescriptions for drugs that were not detectable using a urine sample, Officer Watson informed Fischer that he needed to inspect her medications to ensure that she was complying with condition seventeen. Condition seventeen required:

> The Defendant shall inform her Probation & Parole Officer of all prescriptions obtained from medical personnel prior to filling them. The Defendant shall take all prescription medications as prescribed and in the manner in which they were prescribed.

¶5 Officer Watson testified, "I just said I'm going to check your medication to see that you are taking them as prescribed, she immediately got nervous and said well, my employer—I'm going to be off on my pill count because my employer threw my pills out, and then she reported to me that she had reported it to Lincoln County Dispatch." Although she did not provide a specific date, Fischer apparently had not reported the alleged contact with Lincoln County Dispatch to Officer Watson within 72 hours as required by the conditions of her probation. Officer Watson later contacted Lincoln County Dispatch and learned that the County had no record of the call.

¶6 Based on Fischer's history with pills, Officer Watson concluded that Fischer's behavior was reasonably suspicious and decided to search her purse for other medications. Fischer dumped out the contents of her purse, including a green pill bottle. Fischer explained that the bottle contained her brother's oxycodone pills and that she was

3

keeping track of them for him. She then told Officer Watson that more pills were hidden behind her microwave. Officer Watson found two more pill bottles there—one unmarked and one bearing a prescription label for Fischer's brother.

¶7 Officer Watson called and requested that Lincoln County Dispatch send an officer to arrest Fischer. He issued a probation hold based on her possession of pills without a proper prescription and the failure to timely report contact with law enforcement. The State filed a petition to revoke Fischer's deferred sentence based on her possession of oxycodone in violation of the conditions of her probation. Fischer subsequently filed a motion to suppress the evidence. The District Court denied the motion and later revoked Fischer's deferred sentences. Fischer filed this appeal.

## STANDARD OF REVIEW

¶8 This Court's standard of review of the denial of a motion to suppress is whether the court's findings of fact are clearly erroneous and whether the findings were correctly applied as a matter of law. *State v. Kriesel*, 2000 MT 144, ¶ 7, 300 Mont. 44, 2 P.3d 831.

## DISCUSSION

¶9 This Court has held that a home visit by a probation officer is not a search. *State v. Moody*, 2006 MT 305, ¶¶ 23-24, 334 Mont. 517, 148 P.3d 662. A probation officer conducting a home visit "may not open drawers, cabinets, closets or the like; nor may the officer rummage through the probationer's belongings." *Moody*, ¶ 24. We stated, however, that a home visit has the potential to turn into a search once the officer has reasonable cause to engage in a search. *Moody*, ¶ 24.

4

¶10    Both the Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protect individuals from unreasonable searches and seizures. Generally, a nonconsensual search violates the Fourth Amendment unless it is conducted pursuant to a validly issued warrant supported by probable cause. The United States Supreme Court has concluded, however, that probation searches do not necessarily violate the Fourth Amendment when conducted pursuant to state law and supported by reasonable suspicion to believe contraband would be found. *Griffin v. Wis.*, 483 U.S. 868, 878, 107 S. Ct. 3164, 3171 (1987) (holding that the need for flexibility within the probation system and the special relationship existing between a probationer and his probation officer justified departing from the usual warrant requirement). A number of the federal circuit courts have held that reasonable suspicion also may be established by narrowly tailored restrictions included within a probation agreement. *U.S. v. Wryn*, 952 F.2d 1122, 1124 (9th Cir. 1991) (citing *U.S. v. Giannetta*, 909 F.2d 571, 575 (1st Cir. 1990); *U.S. v. Schoenrock*, 868 F.2d 289, 292 (8th Cir. 1989)).

¶11    In Montana, there must be a factual foundation justifying a probationary search and the search must not be used as an instrument of harassment or intimidation. *State v. Burke*, 235 Mont. 165, 171, 766 P.2d 254, 257 (1988). This Court has stated that a probationer who is still subject to supervision has a diminished expectation of privacy and that the probation officer is in the best position to determine what level of supervision is necessary to provide both rehabilitation of the probationer and safety for society. *State v. Burchett*, 277 Mont. 192, 195-96, 921 P.2d 854, 856 (1996). The

5

reasonable suspicion standard for warrantless probation searches is substantially less than the probable cause standard, because of the probationer's diminished expectation of privacy. *Moody*, ¶ 12. Whether reasonable grounds exist to conduct a probationary search is a factual inquiry determined by the totality of the circumstances. *State v. Stucker*, 1999 MT 14, ¶ 32, 293 Mont. 123, 973 P.2d 835.

¶12 In *State v. Small*, this Court held that a warrantless search initiated by a defendant's probation officer pursuant to the terms of her probation did not violate her constitutional rights. *State v. Small*, 235 Mont. 309, 310, 767 P.2d 316, 317 (1989). The defendant was convicted of felony sale of dangerous drugs and received a deferred three-year sentence with probation conditions. *Small*, 235 Mont. at 310, 767 P.2d at 317. The conditions of Small's probation were similar to Fischer's—one prohibited the possession or use of dangerous drugs except by prescription and another allowed searches and seizures upon reasonable suspicion at any time without a warrant.

¶13 At Small's revocation hearing, the district court denied the defendant's motion to suppress evidence obtained during a search of her home. This Court affirmed, observing that the case turned on the conduct of the probation officer and that "[t]he probation officer must be able to supervise the probationer, and upon his judgment and expertise, search the probationer's residence or cause it to be searched." *Small*, 235 Mont. at 312, 767 P.2d at 318 (quoting *Burke*, 235 Mont. at 171, 766 P.2d at 257).

¶14 Here, Officer Watson's initial decision to conduct a pill count to determine whether Fischer was in compliance with condition seventeen did not constitute a search.

6

Under the authority provided by the probation conditions, Officer Watson could visit Fischer's home, obtain a sample of her bodily fluids, and monitor Fischer's medications without a warrant. That Fischer had lost her job and did not promptly return Officer Watson's phone calls justified a home visit to confirm whether Fischer was complying with the conditions of her probation.

¶15    Condition seventeen required Fischer to take all prescription medication as prescribed and inform Officer Watson of all her prescriptions. Although the condition did not explicitly describe how Officer Watson was to monitor Fischer's medications, his decision to conduct a pill count was necessary to ensure compliance with condition seventeen. Given that Fischer's conviction was drug-related and that Officer Watson knew some of Fischer's medications would not show up in a urine sample, a pill count was far less intrusive than obtaining a blood sample for drug analysis.

¶16    Fischer did not have a reasonable expectation of privacy in her medications given the nature of her offense and the requirements of condition seventeen. The condition was a directive that reasonably implied the authority to confirm whether Fischer was in compliance in this circumstance, as long as Officer Watson did not harass or intimidate her or otherwise infringe on her diminished privacy rights. Importantly, Officer Watson did not immediately conduct a search of Fischer's purse—he initially asked only to see her pills. He did not "rummage through the probationer's belongings" or otherwise violate Fischer's diminished privacy interests. Under these circumstances, we conclude

7

that the decision to conduct a pill count did not infringe upon Fischer's constitutional rights.

¶17 Like in *Small*, Officer Watson "must be able to supervise the probationer, and upon his judgment and expertise, search the probationer's residence or cause it to be searched." *Small*, 235 Mont. at 312, 767 P.2d at 318. By the time Officer Watson actually conducted the search of her purse, Fischer had informed him that she likely violated condition eight of her probation by failing to timely inform him that she had contacted law enforcement, and she had aroused suspicion that she had violated condition seventeen by explaining that she possessed a quantity of pills that did not match her prescription. At that point, Officer Watson had reasonable suspicion to search for additional medications.

## CONCLUSION

¶18 We hold that the District Court's conclusion that Officer Watson conducted a legitimate probation search based on reasonable suspicion was correct. We affirm the District Court's denial of Fischer's motion to suppress evidence seized during the search.


/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ LAURIE McKINNON

8