No. 05-031

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 170

STATE OF MONTANA,

Plaintiff and Respondent,

v.

CYNTHIA BOULTON,

Defendant and Appellant.

APPEAL FROM:    The District Court of the Eighth Judicial District,
                In and For the County of Cascade, Cause No.  BDC 99-464,
                Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

              Vince van der Hagen, Public Defender, Great Falls, Montana

        For Respondent:

              Honorable Mike McGrath, Attorney General; Jennifer Anders,
              Assistant Attorney General, Helena, Montana

              Brant S. Light, County Attorney, Great Falls, Montana

                                    Submitted on Briefs:  October 5, 2005

                                              Decided:  July 25, 2006

Filed:

        _____
                            Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Cynthia Boulton (Boulton) appeals from the order of the Eighth Judicial District Court revoking her two-year deferred sentence, and sentencing her to the Department of Corrections for three years with one year suspended. We affirm.

¶2 We consider the following issues on appeal:

¶3 (1) Do §§ 46-14-311 and -312, MCA (2001), addressing mental disease and defect in sentencing, apply to revocation proceedings?

¶4 (2) Did the District Court err in revoking Boulton's deferred sentence?

**BACKGROUND**

¶5 Boulton was charged with fraudulently obtaining dangerous drugs in November of 1999. Thereafter, Boulton pled guilty to the charge and received a two-year deferred sentence. As conditions of her deferred sentence, the court required that Boulton be placed under the supervision of the adult probation and parole bureau, not use alcohol, complete 100 hours of community service, and pay $35.00 in fines to the District Court.

¶6 Boulton failed to satisfy the conditions of her probation. After a court-approved move to Spokane, Washington, she did not meet her probation officer on a monthly basis, did not complete, or even begin, her community service work, and failed to pay her fine. Consequently, the Cascade County Attorney petitioned the District Court to revoke Boulton's deferred sentence on May 15, 2003, and a bench warrant issued for Boulton's arrest. The Kalispell Police Department arrested an intoxicated Boulton outside a casino on May 26, 2004.

2

¶7 Following a defense motion for a confidential mental examination, which was granted, the District Court held an evidentiary and dispositional hearing to consider the petition to revoke Boulton's deferred sentence. Boulton admitted to several violations, but denied others. At the hearing, the court heard evidence from Boulton's psychiatrist, Dr. Michael Scolatti, regarding Boulton's mental condition. Scolatti stated that Boulton suffered from, among other things, bipolar disorder, borderline personality disorder, and posttraumatic stress disorder. As a result of these disorders, Scolatti recommended that Boulton be placed in a structured setting, and confirmed that the State's proposal to place Boulton in Connection Corrections, followed by either ISP or pre-release, would meet her needs. Scolatti did not believe that Boulton's mental disorders warranted placement in the state mental hospital.

¶8 At the hearing, and critical for our purpose today, Boulton argued that, pursuant to §§ 46-14-311 and -312, MCA (2001), she suffered from a mental disease and defect which rendered her unable to conform her behavior to the requirements of the law, thus requiring, despite her violations, continuation of her probationary sentence, with intensive supervision. The State disagreed, arguing that the plain language of the statutes made them inapplicable in revocation proceedings. After a spirited discussion, the District Court concluded that the statutes did not apply, but also noted that, in any event, Boulton was not suffering from a mental disease or defect affecting her ability to conform to the law. Thereafter, the court revoked Boulton's deferred sentence, and sentenced her to a three-year commitment to the Department of Corrections with one year suspended.

3

¶9 Boulton appeals.

## STANDARDS OF REVIEW

¶10 "The standard for revocation of probation is whether the judge is reasonably satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty." *State v. Averill*, 2001 MT 161, ¶ 22, 306 Mont. 106, ¶ 22, 30 P.3d 1059, ¶ 22. We review a district court's decision to revoke a deferred sentence to determine whether the court abused its discretion. *State v. Welling*, 2002 MT 308, ¶¶ 5, 8, 313 Mont. 67, ¶¶ 5, 8, 59 P.3d 1146, ¶¶ 5, 8. Finally, we a review a district court's conclusions of law *de novo*, to determine whether they are correct. *State v. Ray*, 2003 MT 171, ¶ 34, 316 Mont. 354, ¶ 34, 71 P.3d 1247, ¶ 34.

## DISCUSSION

### 1. Do §§ 46-14-311 and -312, MCA (2001), addressing mental disease and defect in sentencing, apply to revocation proceedings?

¶11 As she did in the District Court, Boulton asserts that her probation violations were the result of her mental illnesses. As such, she argues that her commitment to the Department of Corrections was inappropriate pursuant to §§ 46-14-311 and -312, MCA (2001).[1] The State argues that these provisions do not apply to revocation proceedings, but, instead, apply only to the original sentencing for the convicted offense—in this case, fraudulently obtaining dangerous drugs.

---

[1]We note that although Boulton argues that §§ 46-14-311 and -312, MCA (2001), apply in a revocation setting, she ultimately sought a probationary sentence and ISP following revocation, a sentence inconsistent with § 46-14-312, MCA, which requires a court to commit an offender to the custody of the Department of Public Health and Human Services if it finds the offender's acts result from mental disease or defect.

4

¶12 When interpreting and applying a statute, the role of the courts is to "ascertain the intent of the Legislature." *Friends of the Wild Swan v. DNRC*, 2005 MT 351, ¶ 13, 330 Mont. 186, ¶ 13, 127 P.3d 394, ¶ 13; citing *McCormick v. Brevig*, 2004 MT 179, ¶ 40, 322 Mont. 112, ¶ 40, 96 P.3d 697, ¶ 40. If possible, the intent of the Legislature is to be determined from the plain language of the statute. *McCormick*, ¶ 40. If the intent can be determined from the plain language of a statute, a court "may not go further and apply any other means of interpretation." *McCormick*, ¶ 40.

¶13 Section 46-14-311, MCA (2001), reads as follows:

> **Consideration of mental disease or defect in sentencing.** Whenever a defendant is convicted on a verdict of guilty or a plea of guilty or nolo contendere and claims that *at the time of the commission of the offense of which convicted* the defendant was suffering from a mental disease or defect that rendered the defendant unable to appreciate the criminality of the defendant's behavior or to conform the defendant's behavior to the requirements of law, the sentencing court shall consider any relevant evidence presented at the trial and shall require additional evidence as it considers necessary for the determination of the issue, including examination of the defendant and a report of the examination as provided in 46-14-202 and 46-14-206. [Emphasis added.]

Section 46-14-312, MCA (2001), reads in pertinent part:

> **Sentence to be imposed.** (1) If the court finds that the defendant *at the time of the commission of the offense of which the defendant was convicted* did not suffer from a mental disease or defect as described in 46-14-311, the court shall sentence the defendant as provided in Title 46, chapter 18.
>
> (2) If the court finds that the defendant at the time of the commission of the offense suffered from a mental disease or defect as described in 46-14-311, any mandatory minimum sentence prescribed by law for the offense need not apply and the court shall sentence the defendant to be committed to the custody of the director of the department of public health and human services. . . . The authority of the court with

5

regard to sentencing is the same as authorized in Title 46, chapter 18, if the treatment of the individual and the protection of the public are provided for. [Emphasis added.]

¶14 An examination of these statutes' plain language shows that they allow a defendant to assert at sentencing that, *at the time the convicted offense was committed,* he or she suffered from a mental disease or defect. Thus, upon a homicide conviction, the defendant may assert that he or she suffered from mental disease or defect at the time of the killing. Likewise, upon conviction for fraudulently obtaining dangerous drugs, the defendant may assert that the drugs were fraudulently obtained while he or she suffered from a mental disease or defect. The intent of those statutes is to allow the defendant to show that he is not culpable for the crime for which he has been convicted, and as a result, should be committed to DPHHS rather than receive a prison term. Importantly, these statutes do not mention revocation proceedings. Consistent therewith, the revocation statute, § 46-18-203, MCA (2001), does not mention the mental disease and defect statutes.

¶15 In addition to being inconsistent with the plain language of §§ 46-14-311, 46-14-312, and 46-18-203, MCA, Boulton's argument is contrary to the nature of probation and the revocation process. Probation is an act of grace by a sentencing court, intended to give the offender a chance to rehabilitate outside the prison setting. *See State v. Robinson* (1980), 190 Mont. 145, 148, 619 P.2d 813, 814 ("[t]he District Court's initial decision to place Robinson on probation was a decision to forego complete denial of liberty in favor of a period of restricted and conditional liberty in hopes that the defendant's freedom

6

would best serve the purposes of rehabilitation"); *State v. Kern* (1985), 212 Mont. 385, 388, 695 P.2d 1300, 1301; *State v. Rogers* (1989), 239 Mont. 327, 329, 779 P.2d 927, 929. As such, when a petition to revoke probation is before a district court, the facts presented "need not establish guilt beyond a reasonable doubt." *Robinson*, 190 Mont. at 148, 619 P.2d at 815. In fact, the defendant's mental state is not necessarily an issue when the court determines the existence of a probation violation. *Averill*, ¶¶ 24-26. Instead, the question in a revocation proceeding is "whether the purposes of rehabilitation are being achieved, and whether, by virtue of subsequent criminal conduct or evidence that the defendant's behavior was not in compliance with the rules and objectives of his probation, the purposes of probation are best served by continued liberty or by incarceration." *Robinson*, 190 Mont. at 148, 619 P.2d at 815; *Averill*, ¶ 25. As such, it is generally irrelevant whether a probation violation may have been committed while suffering a mental disease or defect; if the conditions of probation have been violated, probation can be revoked.

¶16 For these reasons, revocation proceedings are generally considered "civil" in nature—"the action to revoke his previously suspended sentence is not a criminal adjudication." *State v. Watts* (1986), 221 Mont. 104, 106, 717 P.2d 24, 25. Indeed, the term "offense," used in §§ 46-14-311, and -312, MCA (2001), by definition does not include probation violations. "Offense" is defined in Title 46 as "a violation of any penal statute of this state or any ordinance of its political subdivisions," § 46-1-202(15), MCA (2001), and does not include a probation violation in this context, since conditions of a

7

deferred or suspended sentence are not penal statutes or ordinances. *See Watts*, 221 Mont. at 107, 717 P.2d at 26 ("[c]learly the District Court can revoke the suspension of a sentence, without that revocation constituting punishment for a new offense"); *see also State ex. rel. Great Falls Tribune v. District Court* (1989), 238 Mont. 310, 316-17, 777 P.2d 345, 348-49. As such, the clear application of the mental disease statutes to criminal proceedings further undermines Boulton's argument that those statutes apply in revocation proceedings.

¶17 These conclusions do not mean that evidence of mental disease or defect is always irrelevant and inadmissible in a revocation proceeding. Pursuant to § 46-18-203, MCA (2001), when presented with evidence that a defendant serving a deferred or suspended sentence has violated conditions of probation, a court may (a) continue the deferred sentence without change, or (b) "impose any sentence that might have been originally imposed." *See* § 46-18-203(7), MCA (2001). Thus, by its plain language, the revocation statute contemplates that probation violations may not warrant sentence revocation or imposition of a prison sentence. A mental disease or defect may constitute a circumstance where fundamental fairness might lead a court to continue or re-impose a probationary sentence. Section 46-18-203(7), MCA (2001), provides significant discretion to the sentencing court, which would include the ability to order mental evaluations and consider the impact of a defendant's mental condition. Thus, while the alternative sentencing procedures of §§ 46-14-311 and -312, MCA (2001), are not

8

applicable in revocation proceedings, evidence of mental disease and defect can appropriately be considered by the revoking court.

¶18     From our review of the statutes, as well as the purposes of probation and revocation, we conclude that §§ 46-14-311 and -312, MCA (2001), do not apply in revocation proceedings. Therefore, we affirm the District Court's ruling.

## 2. Did the District Court err in revoking Boulton's deferred sentence?

¶19     As noted above, we review a district court's decision to revoke a deferred sentence for abuse of discretion. *Welling*, ¶ 8. A court abuses its discretion when it "acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *Citizen Advocates for a Livable Missoula v. City Council,* 2006 MT 47, ¶ 18, 331 Mont. 269, ¶ 18, 130 P.3d 1259, ¶ 18; citing *State v. Riggs*, 2005 MT 124, ¶ 18, 327 Mont. 196, ¶ 18, 113 P.3d 281, ¶ 18. Here, Boulton pleaded true to multiple probation violations, and the court concluded that the evidence of Boulton's mental disorders did not warrant her placement in the state mental hospital. This conclusion was consistent with the testimony of Boulton's psychiatrist. Our review of the record herein permits no conclusion that the District Court abused its discretion in revoking Boulton's sentence.

¶20     Affirmed.


/S/ JIM RICE

9

We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS