DA 07-0482

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 319

STATE OF MONTANA,

Plaintiff and Appellee,

v.

RYAN SCOTT JAMES PRICE,

Defendant and Appellant.

APPEAL FROM:     District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 00-465
Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Cathleen O. Sohlberg, Public Defender; Missoula, Montana

For Appellee:

Hon. Mike McGrath, Montana Attorney General; David Ole Olson,
Assistant Attorney General; Helena, Montana

Fred Van Valkenburg, Missoula County Attorney; Missoula, Montana

Submitted on Briefs:  June 11, 2008

Decided:  September 12, 2008

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Ryan Scott James Price appeals from the judgment of the District Court for the Fourth Judicial District, Missoula County, revoking his suspended sentence for violating his conditions of probation.  We affirm.

¶2     We restate the issues on appeal as follows:

1. Did the District Court abuse its discretion by revoking Price's suspended sentence upon its finding that Price did not suffer from a mental illness?

2.  Did the District Court err by failing to consider alternatives to incarceration?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On November 21, 2000, the State charged Price, by Information, with one felony count of custodial interference, in violation of § 45-5-304, MCA.  Price filed motions to dismiss the charge, which were denied.  The parties entered into a plea agreement on May 17, 2001, whereby Price withdrew his not guilty plea and entered a guilty plea to the charge, and reserved his right to appeal the District Court's denial of his pretrial motions. The District Court sentenced Price to a three year deferred sentence and imposed various probationary conditions.  The facts surrounding Price's custodial interference charge were detailed by this Court in *State v. Price*, 2002 MT 229, 311 Mont. 439, 57 P.3d 42 ("*Price I*"), in which we affirmed the District Court's denial of his pretrial motions to dismiss.

¶4     While Price's first appeal was pending, Price was apprehended for alleged violations of probation conditions.  The first occurred on October 3, 2001, at Price's place of employment.  The incident involved a twelve year old girl who needed to use the

2

store's restroom. Price was asked to unlock the restroom door for her. Price allegedly asked the girl several times if she was sure she did not want to use the boy's restroom, and when he finally unlocked the girl's restroom, he would not remove his hand from the doorknob. The girl felt uncomfortable and refused to go into the restroom. She then became afraid of Price when he asked her about a birthmark on her shoulder. The second alleged violation arose from an incident occurring on March 27, 2002, at the University of Montana campus. Price assaulted an elderly employee of the University's library by stepping on the man's heels and calling him a "bitch." Price was charged with misdemeanor assault for this incident, although the charges were later dropped.

¶5 Based on these two incidents, the State filed a petition to revoke Price's probation on April 5, 2002. Price admitted to the second violation and the District Court dismissed the first violation on the State's motion. The Court then revoked Price's deferred sentence and sentenced him to ten years at the Montana State Prison with five years suspended. A year later, Price filed a motion to withdraw his guilty plea to the custodial interference charge, which the District Court denied on March 19, 2004. Price appealed and this Court affirmed the District Court's denial of Price's motion in *State v. Price*, 2005 MT 79N, 110 P.3d 1057 (Table), 2005 WL 705222 ("*Price II*").

¶6 On January 2, 2006, Price was granted a prison furlough to Bozeman, Montana, and then paroled to the supervision of the Bozeman Intensive Supervision Program. Three months later, the Missoula County Attorney filed a petition to revoke Price's sentence, alleging three violations of probationary conditions. In support, the State offered a letter which Price had written in January 2005 to the Montana Judicial

3

Standards Commission regarding the Honorable C.B. McNeil, the District Judge who had presided over the Lake County custody dispute which had ultimately led to the custodial interference charge against Price. The letter alleged that Judge McNeil had engaged in misconduct and expressed various hostile sentiments against Judge McNeil, including a request for his violent death.

¶7 The State further provided a February 8, 2005 letter Price had written to the Office of Disciplinary Counsel regarding Missoula Deputy County Attorney Kirsten LaCroix. Deputy County Attorney LaCroix prosecuted Price on the custodial interference charge. Price made numerous statements of a violent and sexual nature regarding LaCroix.

¶8 The primary basis for the State's petition to revoke was an incident at the Montana State University campus in Bozeman. On March 23, 2006, Price went to the MSU office of where Jodee Palin worked and told her that he wanted to volunteer for a Shakespeare in the Park program. She informed him that he would need to come back the next day because the responsible person was away from the office. Price returned the following day but Palin informed him that the responsible person was still away from the office and that he would need to come back the following Monday. Price left but then returned a half an hour later. He gave Palin a book entitled "New Beginnings" with a ribbon and a "Blow Pop" attached, as well as a card with the following inscription:

> Bon Jour [sic] – Hear [sic] you go – a catalyst you may need to boost you out of your "rut." A bright new day, a renessaince [sic], sparkling genesis to throw out old things from the wardrobe of your soul and replenish said wardrobe with shiny fresh things that go boom, click-clack & shoot out sparks when you dare touch them. A new life is just what you need – dirrobing [sic] of the same old chryasilis [sic] (cocoon). This you are worthy and deserving of – start now – sil vov plait [sic]. Your, ami, R.P.

4

¶9 Palin testified that Price then sat down in one of her office chairs and began reading the paper and eating food he had brought with him. Price told her that she needed a new beginning and that she should leave everything and start over. She replied that she was happy with her family. Price then walked behind her chair, trapping her between her chair and her desk, and began touching and smelling her hair and rubbing her neck. Palin told Price to stop and that he was scaring her, but Price continued. Price grabbed Palin's wedding ring and told her that she would be more comfortable if she took it off. At this point, a co-worker entered Palin's office and Palin was able to escape. As she was leaving, Palin noticed that the word "Rape" had been written on a dry erase board outside of her office.

¶10 Palin contacted MSU Police, who investigated the incident and arrested Price outside of his apartment. In an interview with police, Price admitted to the physical contact with Palin and told the officer "I wanted to make a fool of myself." Price also stated that he wanted to see how Palin reacted in order to gauge how loyal she was to her husband, that he believed Palin was lonely, and that she needed him to help her "get out of a rut." MSU Police cited Price for assault, but the charge was later dismissed.

¶11 As a result of the petition to revoke, Price was transported back to Missoula and referred for a mental health evaluation. Price filed a motion to dismiss the State's petition to revoke on October 2, 2006, arguing that the letters submitted to the Judicial Standards Commission and the Office of Disciplinary Counsel were not grounds for revocation of Price's probation, and that the incident with Palin could not serve as a basis

5

to revoke Price's probation because the assault charge had been dismissed. The District Court denied Price's motion.

¶12 On November 6, 2006, Price advised the District Court that he planned to raise the affirmative defense of mental disease or defect. The court conducted a hearing over various days in which it received testimony from Palin, MSU Police Sergeant James Sletten, and therapists Dana Miquelle and Dr. Lynn Johnson, who testified regarding Price's mental condition. Previous psychological assessments of Price were also admitted. The court found that Price did not suffer from a mental disease or defect and sentenced him to five years at Montana State Prison. The court stated that the reason for this sentence was "[b]y Defendant's own actions he has shown that he wants to intimidate people and have them believe he is a violent offender." The court specifically found that "the Defendant is able to control his conduct but, at times, he openly decides not to conform his conduct to the requirements of the law" and "[t]he Defendant's conduct poses a risk to any community wherein he resides." This appeal followed.

## STANDARD OF REVIEW

¶13 "The standard for revocation of probation is whether the judge is reasonably satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty." *State v. Boulton*, 2006 MT 170, ¶ 10, 332 Mont. 538, ¶ 10, 140 P.3d 482, ¶ 10 (internal quotation marks omitted). The standard of review of a district court's decision to revoke a defendant's suspended sentence is "to determine whether the court abused its discretion and whether the court's decision was supported by a preponderance of the evidence in favor of the State." *State v. Shockley*, 2001 MT 180, ¶ 8, 306 Mont.

196, ¶ 8, 31 P.3d 350, ¶ 8.  A district court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice.  *State v. Sanchez*, 2008 MT 27, ¶ 15, 341 Mont. 240, ¶ 15, 177 P.3d 444, ¶ 15.

## DISCUSSION

¶14  ***Issue One.  Did the District Court abuse its discretion by revoking Price's suspended sentence upon its finding that Price did not suffer from a mental illness?***

¶15  Price argues that the District Court abused its discretion when it found that Price did not suffer from a mental illness and revoked his sentence.  While Price recognizes our holding in *Boulton* that §§ 46-14-311 and -312, MCA, the statutes governing consideration of mental disease or defect in sentencing, do not apply in revocation proceedings, he notes that a district court may nonetheless take the fact that a probationer suffers from a mental illness into consideration during the revocation proceeding.  *See Boulton*, ¶ 17.

¶16  In support of his argument that the District Court erred when it found that he did not have a mental illness, Price references the testimony of Dana Miquelle and Dr. Lynn Johnson at the March 9, 2007 hearing.  Miquelle testified that he did an assessment of Price and opined that Price suffered from a psychotic delusional illness.  Miquelle stated that Price was socially awkward and lacking in social skills.  Miquelle also stated that it would be fair to say that Price did not know right from wrong.  However, on cross examination, Miquelle was asked about Price's confrontational tone during the

assessment process, at which point the following exchange between the prosecutor and Miquelle occurred:

> Q.      That would indicate to me that he knew darn well that he was saying something that was critical and demeaning, knew what the difference between right and wrong, and wanted to test your reaction to him, in terms of doing that. Would you agree?
> A.      I would agree with that.

Miquelle went on to testify that psychotic delusions are episodic in nature.

¶17     Dr. Lynn Johnson testified regarding two evaluations he did of Price in 2005 while Price was still in custody. Dr. Johnson stated that he evaluated Price in light of the letters he had sent regarding Judge McNeil and Prosecutor LaCroix. Dr. Johnson diagnosed Price with a schizotypal personality disorder, which he explained "consists of odd interests, rather seclusive, and avoidant personality traits, momentary lapses in good judgment, and even good reality testing, a tendency to become somewhat grandiose, and have difficulty, occasionally, intermittently, making good sense of reality." Dr. Johnson noted that although Price's letters appeared violent in nature, no violence was actually intended by Price. Dr. Johnson also testified that Price misinterpreted social cues and that the incident with Ms. Palin was consistent with Price's history of poor judgment. Dr. Johnson further stated that he considered a diagnosis of Asperger's disorder for Price, but that he had not had sufficient time to pursue that diagnosis in detail.

¶18     Psychological assessments of Price in November 2001 and November 2002 were also received by the court. The November 2001 assessment by Sandy Heaton, LCPC, explained that Price had been evaluated the year earlier by Dr. Robert Shea, who had opined that while Price was "personality disordered," he did not suffer from a mental

8

disease or defect. Heaton's November 2001 assessment reached the same conclusion, noting that Price did not appear to be mentally ill. Heaton also concurred with Dr. Shea's diagnosis of "Mixed Personality Disorder NOS with antisocial, narcissistic and borderline traits." The 2002 assessment, conducted by Dr. William D. Stratford, likewise found that Price was personality disordered but concluded that there was not "any indication that he suffers from a psychosis . . . ."

¶19 A review of the record illustrates that the District Court's finding that Price did not suffer from a mental illness was supported by the evidence. Further, the District Court's statement that, by his own actions, Price had shown that he wanted to intimidate people and have them believe that he was violent was likewise supported by the record. This inference was permissibly drawn from various incidents, including the letters he wrote about Judge McNeil and Prosecutor LaCroix, his misdemeanors assaults and his statements about these events, as well as conclusions reached in several previous psychological assessments.

¶20 We hold that the District Court did not abuse its discretion in revoking Price's suspended sentence.

¶21 ***Issue Two. Did the District Court err by failing to consider alternatives to incarceration?***

¶22 Price briefly argues that the District Court abused its discretion when it failed to consider alternatives to incarceration that would further the purposes of Price's suspended sentence, thereby violating due process, and cites to *State v. Lee*, 2001 MT 176, 306 Mont. 173, 31 P.3d 998, in support of his argument. In *Lee*, the defendant was

9

required to complete the prison's sex offender program while incarcerated as a condition of his pending suspended sentence. *Lee*, ¶ 12. Due to circumstances beyond Lee's control, he was unable to complete the sex offender treatment program by the time of his scheduled release date and the State filed a petition to revoke his suspended sentence. *Lee*, ¶¶ 6-7. The District Court granted the State's petition to revoke and Lee appealed on the ground that revocation of his suspended sentence violated due process. *Lee*, ¶ 7. We held that, under the circumstances, due process required the trial court to consider whether there were adequate alternatives to incarceration that would further the purpose of Lee's suspended sentence, and that this was especially true when "Lee's failure to complete sex offender treatment as required by the terms of his sentence was due not to his willful conduct, but rather was due to the actions of the State." *Lee*, ¶ 23.

¶23 The State responds by arguing that the District Court had no reasonable alternatives to incarceration that would adequately protect the community. The State distinguishes Price's case from *Lee* by noting that while Lee's failure to satisfy the conditions of his suspended sentence was due to the actions of the State, the State played no role in Price's violation of the conditions of his suspended sentence.

¶24 We agree that *Lee* is inapposite under the facts here. Further, the District Court necessarily considered alternatives to incarceration by concluding that Price posed "a risk to any community wherein he resides." Price had committed disturbing acts against others in multiple communities. Accordingly, the court concluded that the only option was to incarcerate Price. The statutes governing the revocation process permit a district court to conclude "by virtue of subsequent criminal conduct or evidence that the

10

defendant's behavior was not in compliance with the rules and objectives of his probation," and that the purposes of probation are best served by incarceration. *Boulton*, ¶ 15 (citation and internal quotation marks omitted). The District Court's recognition of the risks of Price's presence in a community and decision to incarcerate him fell well within this discretion and did not violate due process.

¶25 Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS