FILED

09/09/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0709

DA 23-0709

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 204

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

CISSY DEEN MANYHIDES,

     Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC-22-85
Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Rufus I. Peace, Peace Law Group, LLC, Jacksonville, Florida

     For Appellee:

     Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant
Attorney General, Helena, Montana

     Joshua A. Racki, Cascade County Attorney, Angela Payne, Deputy County
Attorney, Great Falls, Montana

Submitted on Briefs:  June 25, 2025

Decided:  September 9, 2025

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Cissy Deen Manyhides appeals the Eighth Judicial District Court's denial of her motion to suppress evidence discovered during a probation home visit to her apartment. Manyhides asserts that the visit evolved into a search when one of the probation officers entered her bedroom during a walkthrough of the premises. The sole issue on appeal is whether the District Court erred in finding that the officers did not conduct a search of Manyhides's apartment. We affirm on the grounds of our well-established precedent that a standard probation home visit does not constitute a search.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 In July 2020, Cissy Manyhides was placed on probation after she pleaded guilty to one count of Endangering the Welfare of a Child. As part of her sentence, Manyhides agreed to abide by several standard probation conditions imposed by the Adult Probation and Parole Bureau. In relevant part, these conditions required Manyhides to "make [her] residence open and available to an officer for a home visit or for a search upon reasonable suspicion" and to abstain from using or possessing illegal drugs in her home.

¶3 In February 2022, Probation Officers Josh Green and Laura Jerome conducted a home visit at Manyhides's apartment. When the officers arrived, Manyhides indicated that two of her family members were about to leave the residence. After her guests left, Manyhides let the officers inside. Jerome spoke with Manyhides while Green began a walkthrough and visual inspection of the apartment to ensure that it was safe and unoccupied.

2

¶4    As Green proceeded, he noticed a packet of small baggies commonly used to contain methamphetamine sitting on a nightstand in Manyhides's bedroom. Green examined the area further and found a plate sitting on the floor underneath the nightstand that contained more baggies, a scale, baking powder, and a hose extension commonly used to smoke meth. Green then observed Manyhides's purse sitting on top of the nightstand. He emptied her purse and found two baggies full of a white crystal substance. The officers placed Manyhides in custody and contacted the Great Falls Police Department to conduct a thorough search of her apartment. The search returned more drug paraphernalia, including baggies, scales, and glass pipes, as well as suspected methamphetamine.

¶5    The State charged Manyhides with Criminal Possession of Dangerous Drugs and Criminal Possession of Drug Paraphernalia in violation of § 45-9-102 and § 45-10-103, MCA, respectively. Manyhides moved to suppress the evidence and to dismiss the charges against her on the ground that the officers conducted an unlawful search of her apartment.

¶6    In January 2023, the District Court denied Manyhides's motion, finding that the officers' visit did not constitute a search. Manyhides pleaded guilty to the charge of felony drug possession, reserving her right to appeal the District Court's denial of her motion to suppress.

**STANDARD OF REVIEW**

¶7    This Court reviews a district court's denial of a motion to suppress to determine whether its findings of fact are clearly erroneous and whether its legal conclusions are correctly applied. *State v. Conley*, 2018 MT 83, ¶ 9, 391 Mont. 164, 415 P.3d 473 (citation

3

omitted). A court's finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if this Court's review leaves us with the firm conviction that a mistake has been made. *Conley*, ¶ 9. A district court's conclusions of law are reviewed de novo. *State v. Summers*, 2025 MT 109, ¶ 8, 422 Mont. 88, 569 P.3d 542.

**DISCUSSION**

¶8 *Whether the District Court properly concluded that the officers' probation home visit was not a search requiring reasonable cause.*

¶9 The Fourth Amendment to the United States Constitution and Article II, Section 11, of the Montana Constitution guarantee individuals the right to be free from unreasonable searches by the government. U.S. Const. amend. IV; Mont. Const. art. II, § 11; *State v. Peoples*, 2022 MT 4, ¶ 12, 407 Mont. 84, 502 P.3d 129; *State v. Staker*, 2021 MT 151, ¶ 10, 404 Mont. 307, 489 P.3d 489. The Montana Constitution bolsters this protection by granting Montanans an express right of individual privacy against unlawful government intrusions. Mont. Const. art. II, § 10; *State v. Mefford*, 2022 MT 185, ¶ 11, 410 Mont. 146, 517 P.3d 210. Article II, Sections 10 and 11 collectively grant Montanans a broader state right to privacy than the protection afforded under the United States Constitution. *Mefford*, ¶ 11 (citing *Staker*, ¶ 9).

¶10 A search occurs when a government actor intrudes upon an individual's reasonable expectation of privacy. *Mefford*, ¶ 12. A reasonable expectation of privacy exists when an individual possesses a subjective expectation of privacy that society views as objectively reasonable. *Mefford,* ¶ 12 (citing *Staker*, ¶ 11). Absent an exception to the warrant

4

requirement, the government must obtain a valid warrant to conduct a search of a constitutionally protected area. *Peoples*, ¶ 15.

¶11 Probationers, however, are subject to a diminished expectation of privacy during the term of their supervision. *State v. Burchett*, 277 Mont. 192, 195-96, 921 P.2d 854, 856 (1996). A probation officer may engage in a warrantless search of a probationer's residence once the officer acquires reasonable cause to suspect that the probationer may be in violation of the conditions of the probationer's supervision or the criminal law. *Mefford*, ¶ 32 (citing *Peoples*, ¶ 17). The "reasonable cause" standard is "substantially less than the probable cause standard required by the Fourth Amendment because of the probationer's diminished expectation of privacy." *Mefford*, ¶ 34 (internal citations and quotations omitted).

¶12 A home visit is a commonly imposed condition of probation that allows the probation officer to ensure that the probationer is complying with the restrictions of his or her supervision. *State v. Moody*, 2006 MT 305, ¶ 21, 334 Mont. 517, 148 P.3d 662. A home visit conducted pursuant to a term of supervision is not a search and thus is not subject to the reasonable cause standard. *Moody*, ¶ 28. Once a probationer is made "unambiguously aware" of the express conditions of his or her probation, the probationer no longer possesses a reasonable expectation of privacy that precludes such visits. *Moody*, ¶ 19.

¶13 Green observed drug paraphernalia in plain view on a nightstand in Manyhides's bedroom in violation of both the conditions of her supervision and the law. Manyhides

concedes that once Green observed the drug paraphernalia, Green acquired reasonable cause to engage in a search of her purse and nightstand. Manyhides disputes, however, the lawfulness of Green's initial presence near her bedroom. Manyhides argues that Green exceeded the scope and purpose of a home visit when he ventured into a traditionally private area of her residence, transforming the visit into an unconstitutional search.

¶14 Manyhides's deferred sentence was contingent upon her compliance with the condition that she make "[her] residence open and available to an officer for a home visit or for a search upon reasonable suspicion." Manyhides assented to this term when she signed the conditions of her probation. Manyhides consequently forfeited any reasonable expectation of privacy in her residence that would preclude the home visit at issue. Thus, Green and Jerome did not engage in a search when they entered Manyhides's apartment.

¶15 Manyhides asserts that the visit transformed into a search when the officers entered the "private areas" of her residence. Manyhides is correct that home visits are limited in scope. *See State v. Thompson*, 2023 MT 194, ¶ 19, 413 Mont. 446, 537 P.3d 461 (clarifying that a home visit does not give probation officers "carte blanche" to enter the probationer's home). By itself, however, a home visit authorized by a probationer's sentencing conditions is "not a search." *Thompson*, ¶ 21. An officer may conduct a home visit to visually inspect the premises, to assess the home for officer safety, to observe the probationer's lifestyle factors, and to observe the residence for contraband. Administrative and Sign-Up Procedures for Community Supervision, Dep't. of Corr. Prob. & Parole Div. Operational Procedure, Procedure No. PPD 6.3.201(IV)(C)(6) (DOC July 29, 2019).

6

During a home visit, an officer "may not open drawers, cabinets, closets or the like; nor may the officer rummage through the probationer's belongings." *Moody*, ¶ 24. Until the probation officer acquires reasonable cause to engage in a search, the officer's presence in the probationer's residence must remain within the parameters of a home visit. *Moody*, ¶ 24.

¶16 Jerome and Green remained within the parameters of a home visit until Green acquired reasonable cause to search Manyhides's belongings. Green walked through Manyhides's apartment to assess the scene for his and Jerome's safety. While doing so, he conducted a visual inspection of the premises and observed contraband on the nightstand. Green's actions fell squarely within the permissible purposes of a home visit as described in the Department of Corrections manual. Manyhides does not challenge the standards set forth in the manual or demonstrate that they exceed constitutional standards.

¶17 Manyhides cites *State v. Olson*, 2002 MT 211, 311 Mont. 270, 55 P.3d 935, in support of her position that Green's presence in her bedroom was unlawful. In *Olson*, we analyzed the plain view exception to the warrant requirement. That exception justifies an officer's warrantless seizure of evidence when the officer is lawfully located in a place from which the evidence readily may be seen. *Olson*, ¶ 10. An officer arrested Olson in her kitchen, then leaned through the door between Olson's kitchen and living room to observe a marijuana bong. *Olson*, ¶¶ 4, 12. We reasoned that because the officer's lawful presence in Olson's home was confined to the kitchen, the officer intruded into an area of the home he was not privileged to enter by leaning through the doorway. *Olson*, ¶ 12. The

plain view exception therefore did not apply to justify the officer's seizure of the bong. *Olson*, ¶ 12.

¶18 Unlike Manyhides, Olson was not a probationer. She maintained a reasonable expectation of privacy throughout her home. Manyhides, in contrast, waived any expectation of privacy in her apartment with respect to home visits when she signed her probation conditions. *See Moody*, ¶ 19. Green and Jerome were lawfully present in Manyhides's apartment when Green observed the drug paraphernalia.

¶19 *Thompson* is more on point to the facts of this case.[1] The probationer, Regina Thompson, similarly was required to make her home open and available for visits. *Thompson*, ¶ 3. During one such visit, the probation officers observed a methamphetamine pipe in plain view in Thompson's living room. *Thompson*, ¶ 8. Upon observing the pipe, one of the probation officers searched Thompson's dresser and discovered a large quantity of methamphetamine. *Thompson*, ¶ 9. We concluded that the discovery of the methamphetamine was lawful because (1) the officer's initial presence in Thompson's home was authorized as a home visit, and (2) the officer's plain view observation of drug paraphernalia in Thompson's home gave the officers reasonable cause to search Thompson's dresser. *Thompson*, ¶ 21.

¶20 Like *Thompson*, Green lawfully was in Manyhides's apartment for the purpose of conducting a home visit. While conducting a walkthrough of the premises to search for

---

[1] The central issue in *Thompson* involved the officers' initial entry into Thompson's home. *Thompson*, ¶ 14. Manyhides does not dispute that Green and Jerome lawfully entered her apartment.

other occupants, Officer Green noticed drug paraphernalia in plain view on Manyhides's nightstand. These observations provided Green with reasonable cause to conduct a thorough search of the nightstand area.

¶21 Manyhides urges this Court to adopt a new rule constraining the scope of a permissible home visit to "areas generally accessible to guests invited into a person's home." She asserts that if an officer ventures into "private areas" of the home without reasonable cause, this Court should deem such an intrusion a search.

¶22 We decline to depart from our well-established authority in favor of Manyhides's proposed rule. This Court consistently has applied *Moody* to conclude that a home visit is not a search. *See, e.g., Thompson*, ¶ 17; *State v. Fischer*, 2014 MT 112, ¶ 9, 374 Mont. 533, 323 P.3d 891; *State v. Greeson*, 2007 MT 23, ¶¶ 9-10, 336 Mont. 1, 152 P.3d 695. Manyhides proposes a novel standard for which she cites no legal authority. We will not address a party's unsupported arguments on appeal. *State v. Cybulski*, 2009 MT 70, ¶ 13, 349 Mont. 429, 204 P.3d 7 (explaining that the Court will not conduct legal research to support a party's argument).

¶23 The standard Manyhides proposes also is unworkable in practice. If we establish a bright-line rule that prevents officers from accessing "private areas" of a probationer's home, we eliminate an officer's discretion to tailor the scope of the visit to balance officer safety and individual privacy. The law affords probation officers a "degree of flexibility" in exercising their supervisory powers. *See Conley*, ¶ 18. We have recognized that the probation officer "is in the best position to determine what level of supervision is necessary

to provide both rehabilitation of the probationer and safety for society." *Burchett*, 277 Mont. at 195-96, 921 P.2d at 856. Manyhides's proposed rule contravenes these established principles. Officers would have to make judgments about what the probationer in a given situation may consider a "private area," generating uncertainty and increased litigation.

## CONCLUSION

¶24 We conclude that the District Court correctly held that the officers did not engage in an unconstitutional search of Manyhides's apartment. Accordingly, we affirm the District Court's denial of Manyhides's motion to suppress.

/S/ BETH BAKER

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M BIDEGARAY
/S/ INGRID GUSTAFSON
/S/ JIM RICE